UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TONY L. HILL,

    Plaintiff,

v.                                                            CASE NO. 8:23-cv-26-WFJ-NHA

ARAMARK, LLC, et al.,

    Defendant.
_____/

**ORDER**

Before the Court is Plaintiff Tony L. Hill's ("Plaintiff") *pro se* Second Amended Complaint for Violation of Civil Rights (Dkt. 65), Defendants Aramark Correctional Services, LLC's and H. Pierre's (collectively, "Defendants") Motion to Dismiss (Dkt. 69), and Plaintiff's Response (Dkt. 72). Upon careful consideration, the Court denies Defendants' Motion.

**BACKGROUND**

Plaintiff, a diabetic inmate at Zephyrhills Correctional Institute ("Zephyrhills"), brings this § 1983 claim against Defendants. Aramark is a food service provider contracted with the Florida Department of Corrections ("FDOC") to provide inmate meals at Zephyrhills. Ms. Pierre is an Aramark supervisor. The Second Amended Complaint alleges that Aramark consistently fails to provide diabetic inmates with timely meals that are calorically and nutritionally adequate.

Plaintiff's Eighth Amendment claim is based on three broad assertions: (1) diabetic inmates are to receive 2,600 calories per day, but the meals provided by Aramark consistently fall short of this requirement; (2) diabetic inmates are to eat no later than thirty minutes after receiving insulin treatment, but Aramark is regularly late with diabetic meal service; and (3) Aramark purchases and prepares meals that are nutritionally inadequate and practically indigestible. The Complaint and its attachments provide factual support for all three claims.

First, Plaintiff attached notes, signed by Zephyrhills medical providers, to the Complaint. The notes record Plaintiff's diabetes diagnosis and prescribe him a 2,600-calorie diet. Dkt. 65-1 at 19–21. But Plaintiff contends that Aramark is not providing him 2,600 calories a day. Dkt. 65 at 3. He states that when Aramark runs out of an item that is on the daily menu, the supervisor instructs staff to simply leave that slot on the tray empty instead of providing a substitute. *Id.* Attachments to the Complaint allege that Aramark staff withhold butter and vegetable spread, further reducing the caloric content of each meal. Dkt. 65-1 at 22. An affidavit of an inmate kitchen worker accuses Aramark of adding water to leftovers, which increases the volume of each menu item without replacing calories. *Id.* at 6.2 Finally, attachments describe a specific instance when the water at Zephyrhills was apparently turned off, and Aramark provided multiple contingency meals with inadequate calories. *Id.* at 24.

2

Next, attachments to the Complaint assert that "every time" the diabetic inmates are given insulin, they have to wait forty-five minutes to eat because Aramark staff is preparing other meal trays instead of serving the medical diets. Dkt. 65-1 at 16. Attached grievances state that inmates told Ms. Pierre of this problem, but she did nothing. Dkt. 65-1 at 15. Plaintiff contends that waiting longer than thirty minutes to eat after receiving insulin treatment lowers his blood sugar, putting him at risk of collapse and diabetic coma. *Id.* at 18.

Finally, the Complaint and its attachments describe the nutritional inadequacy of the food served by Aramark and its effects on their health. It seems there are two major issues with Aramark's meals: indigestible meat and excessive starch.

Plaintiff states that Aramark serves inedible soybean meat and "vegetable texture" meat byproducts. Dkt. 65 at 5. In affidavits, other diabetic inmates attest to the meat's poor quality, describing a "loaf" mixed from scraps of animal intestine and other undesirable cuts. Dkt. 65-1 at 51, 54, 56, 59, 61–63. The affiants state that, while the menu appears varied, in actuality each meal contains the same animal byproduct loaf under different labels (i.e., "Southern BBQ," "Chili Mac," "Taco Meat"). *Id.* They claim that Ms. Pierre orders this low-quality meat to save Aramark money, thereby earning bonuses for herself. *Id.*

Plaintiff alleges that the animal byproduct loaf served by Aramark injures his stomach lining and intestines, causing internal bleeding, blood in his stool, and ulcers. Dkt. 65 at 5. Because of these injuries, medical providers have ordered him to undergo testing and x-rays. *Id.* He attaches several prescriptions, which he says are to treat the damage to his stomach. Dkt. 65-1 at 96–101. Other inmates also claim the loaf makes them sick, with multiple affiants asserting that they have stomach pain and diarrhea "immediately" after eating it. Dkt. 65-1 at 50–51, 56, 59.

As for the claims of excessive starch, Plaintiff states he does not receive fresh fruit and vegetables, dairy, or wheat products. Dkt. 65 at 3–4. Affidavits describe a diet comprised mostly of potatoes, grits, rice, and noodles. Dkt. 65-1 at 50, 52, 54, 56–60, 62. Often these starches come in the form of "double portions," presumably in place of a more varied diet. *Id.* at 52, 57, 59–60, 62. Some affiants further assert that the food is frequently spoiled. *Id.* at 54, 57, 59–60. The excessive starch allegedly harms diabetics in two ways: (1) requiring higher doses of insulin; and (2) increasing and/or deregulating their blood sugar. Dkt. 65-1 at 53, 54, 57, 60, 62.

Multiple affidavits distinguish the poor quality of Aramark's food from that of former FDOC-contracted meal providers. One affiant did not require insulin under the previous food service provider but does under Aramark. *Id.* at 52.

Another complains of the poor nutrition "since Aramark took over food service." *Id.* at 54. One inmate states that the previous food service contractor provided nutritious meals of decent quality while relying on the same FDOC menus as Aramark. *Id.* at 61. Another wrote, "In twenty years of incarceration I have seen Food Service Provider Companies come and go, and I have never seen or experienced such a horrible and disgusting variety of meats." *Id.* at 56.

Plaintiff filed his initial Complaint in January 2023, and it was dismissed for failure to exhaust administrative remedies. Dkt. 58. After achieving administrative exhaustion, Plaintiff filed an Amended Complaint and, by leave of the Court, the instant Second Amended Complaint. He seeks monetary and injunctive relief, asking the Court to order Aramark to serve fresh fruits, real dairy products, and real meat. Dkt. 65 at 5. Defendants move to dismiss, arguing that Plaintiff failed to: (1) state an objectively serious harm; (2) show Aramark acted with deliberate indifference; (3) demonstrate a custom or policy of Aramark's that caused the alleged constitutional violation; and (4) show that Ms. Pierre was personally engaged in the allegedly violative conduct. Dkt. 18. The Court will address these arguments.

## LEGAL STANDARD

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering the motion, the Court must accept all factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). The Court should limit its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted). "Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010).

## ANALYSIS

The Eighth Amendment prohibits cruel and unusual punishment, i.e. "the unnecessary and wanton infliction of pain." *Thomas v. Bryant*, 614 F.3d 1288, 1303 (11th Cir. 2010). "In the prison context, three distinct Eighth Amendment claims are available to plaintiff inmates alleging cruel and unusual punishment." *Id.* These are: (1) specific conditions of confinement; (2) excessive force; and (3) deliberate indifference to serious medical need. *Id.* Each type of claim must satisfy

an objective and a subjective prong. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Under the objective prong, a plaintiff must show a deprivation that is "sufficiently serious to constitute a denial of the minimal civilized measure of life's necessities." *Id.* at 1304 (quoting *Farmer*, 511 U.S. at 834). Under the subjective prong, the plaintiff must demonstrate that the responsible state actor possessed a "sufficiently culpable state of mind." *Id.* (quoting *Farmer*, 511 U.S. at 834). While these prongs are the same for every cause of action brought under the Eighth Amendment, "what is necessary to show sufficient harm and what is necessary to show a sufficiently culpable state of mind varies with the type of Eighth Amendment claim at issue." *Id.*

As stated above, Plaintiff's Eighth Amendment claim can be subdivided into three basic assertions: (1) Aramark does not serve diabetic inmates the medically-required 2,600 calories per day; (2) Aramark does not provide diabetic inmates with timely meals after insulin treatment; and (3) the food Aramark selects and prepares is nutritionally deficient. The first two assertions allege deliberate indifference to serious medical need, while the third is a specific conditions of confinement charge. This Order will address the claims in relation to Defendant Aramark, followed by Defendant Pierre.

I.    **Deliberate Indifference to Serious Medical Need (Against Aramark)**

To state an Eighth Amendment claim based on deliberate indifference to a serious medical need, an inmate must show: (1) an objectively serious medical need; and (2) "deliberate indifference," subjectively, on the part of the responsible prison official. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A medical need is objectively serious if it "has been diagnosed by a physician as mandating treatment" or "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* A prison official acts with "deliberate indifference" when she "knows of and disregards an excessive risk to inmate health or safety." *Id.* "[D]eliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Id.* (quoting *McElligot v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). If an official knows that an inmate needs serious medical care, a failure or even—in some cases—a delay to provide that care goes beyond negligence and may constitute deliberate indifference. *Id.* at 1246.

Specifically addressing meals for diabetic inmates, other circuits have held that, while prisons need not accommodate inmates' dietary preferences, the Eighth Amendment imposes a duty to "provide a medically appropriate diet when necessary." *Scintio v. Stansberry*, 841 F.3d 219, 233 (4th Cir. 2016) (first citing

*Frazier v. Dep't of Corr.*, 125 F.3d 861, at *1 (10th Cir. 1997) (unpublished table opinion); then *Byrd v. Wilson*, 701 F.2d 592, 595 (6th Cir. 1983); and then *Jackson v. Hanlon*, 923 F.2d 856, at *1 (7th Cir. 1991) (unpublished table opinion)). Correctional institutions must provide diabetic prisoners with a "combination of foods in each meal that [provide] adequate sustenance without causing adverse medical consequences." *Scintio*, 841 F.3d at 234. Within the Eleventh Circuit, district courts have permitted Eighth Amendment claims to proceed when plaintiff inmates claimed that meals served by defendant food service companies did not comport with a prescribed medical diet, did not contain sufficient calories, or were not served promptly after insulin treatment. *Cormier v. Ga.*, 5:21-cv-00218-MTT-MSH, 2022 WL 20717348, at *3 (M.D. Ga. Jan. 19, 2022); *Wilder v. Aramark Servs., Inc.*, No.: 3:17-cv-239-RV-EMT, 2018 WL 5274257, at *6 (N.D. Fla. Sept. 24, 2018).

The specific factual scenario before the Court is not unique; district courts around the country have allowed claims to survive when diabetic inmates alleged that Aramark failed to serve them a prescribed medical diet or failed to serve meals within a timely manner after insulin treatment. *See Wilder*, 2018 WL 5274257, at *7; *Scruggs v. Moody*, NO. 3:22-CV-834-JD-MGG, 2023 WL 5217153, *2 (N.D. Ind. Aug. 11, 2023); *Simmons v. Aramark*, NO. 3:16-CV-P120-JHM, 2016 WL 3748548, *3 (W.D. Ky. July 11, 2016); *McCabe v. Aramark Food Servs.*, No. 01 C

5429, 2002 WL 27661, *2 (N.D. Ill. Jan. 10, 2002); *see also Hardin v. Aramark Food Serv. Corp.*, 11-cv-3238, 2017 WL 1658812, *5 (C.D. Ill. May 1, 2017) (denying Aramark's motion for summary judgment); *Berry v. Aramark Corr. Servs., LLC*, No. 1:18-cv-03651-JRS-MPB, 2020 WL 374436, at *2 (S.D. Ind. Jan. 23, 2020) (finding inmate had a significant likelihood of success on his claim that Aramark violated the Eighth Amendment by failing to provide him with a medically prescribed diet); *but see Persinger v. Roberts*, No. 2:09–cv–00825, 2010 WL 3418379, *13 (S.D. W. Va. Aug. 6, 2010) (inmate failed to state Eighth Amendment claim based on denial of medical diet when he did not allege "specific intent to cause harm" or "presence of severe injuries"). Moreover, Aramark does not contest that diabetes is an objectively serious medical need. *See, e.g.*, *Hammonds v. Theakston*, 833 F. App'x 295, 300 (11th Cir. 2020) (unreported). Plaintiff has therefore satisfied the objective prong.[1]

Aramark argues that the Complaint fails to establish the subjective deliberate indifference prong. It states that "Plaintiff does not and cannot allege that Aramark acted with deliberate indifference because Aramark simply provided the diet to Plaintiff as specified in its contract with the Florida Department of Corrections."

---

[1] "[M]any—although not all—courts to have considered the question have concluded that Aramark, when it feeds prisoners, is a state actor under the public function test." *Ackridge v. Aramark Corr. Food Servs.*, No. 16-cv-6301 (KMK), 2018 WL 1626175, at *8 (S.D.N.Y. Mar. 30, 2018) (collecting cases). Aramark does not contest that it acts under color of law when providing food service for the FDOC. The Court will therefore assume it is a proper defendant for a § 1983 action.

10

Dkt. 69 at 14. Aramark further reasons that "whether Plaintiff receives a diabetic meal and what the menu is for diabetic meals are not Aramark's to make." *Id.* This argument misses the mark. Plaintiff is not complaining that he should be prescribed a diabetic meal or that the menu for diabetics is inadequate. Instead, he is alleging that he has been prescribed a specific diet by FDOC medical staff, and that Aramark is not providing him meals that satisfy that diet, i.e. Aramark is not offering him 2,600 calories worth of food a day or serving the meals in a timely manner. Dkt. 65 at 3; Dkt. 65-1 at 58–59. Plaintiff's allegation that Aramark failed to provide him with a prescribed medical diet is exactly the type of claim that multiple district courts around the country, including within the Eleventh Circuit, have allowed to survive motions to dismiss. *See, e.g.*, *Wilder*, 2018 WL 5274257, at *7.

In contrast, none of the cases Aramark cites in support of its argument are on point. In *DeJesus v. Aramark* and *Harrison v. Moteka*, both cited by Aramark, neither plaintiff had a medical diagnosis or prescription for a special diet. *DeJesus v. Aramark Food Serv., Inc.*, No. 13–5734, 2014 WL 144732, *3 (E.D. Penn. Jan. 14, 2014); *Harrison v. Moteka*, No. 9:06–1203–PMD–GCK, 2006 WL 4071598, *5 (S.C. Dec. 1, 2006). And in *Jones v. Western Tidewater Reg'l Jail*, the plaintiff's grievance was with the medical diet itself, not Aramark's compliance with it. 187 F. Supp. 3d 648, 657 (E.D. Va. May 6, 2016).

11

Similarly, in *Escalante v. Huffman* the plaintiff stated an Eighth Amendment claim for inadequate nutrition, but the food service defendant was not held liable because she was not responsible for prescribing the medical diets. Instead, she was merely "responsible for ensuring that offenders who receive a medically prescribed diet receive meals consistent with the ordered diet." No. 7:10cv00211, 2011 WL 3107751, *9, 12 (W.D. Va. July 26, 2011). In the instant case, Plaintiff is not asking Aramark to prescribe a medical diet; he is alleging that Aramark does not ensure he receives meals consistent with the diet FDOC medical staff have ordered.

Finally, the court in *Nesbit v. Cribb* ruled against the plaintiff on summary judgment because he failed to produce evidence that Aramark was serving him fewer than 2,800 calories. No. 6:09–2350–RBH–WMC, 2010 WL 1838725, *9 (S.C. Apr. 13, 2010). But at this stage in the instant case, the Court accepts as true Plaintiff's contention that Aramark is not serving him the required 2,600 calories per day.

Plaintiff filed multiple grievances making Aramark aware of his specialized diet, the fact that he was not receiving meals consistent with that diet, and the resultant risk of increased blood sugar from inadequate calories and untimely meal srevice. Dkt. 65-1 at 8–13, 16–17, 22, 24–26, 28–29. Plaintiff has pled a facially plausible claim against Aramark for an Eighth Amendment violation based on

deliberate indifference to a serious medical need, sufficient to survive the instant Motion to Dismiss.

## II. Specific Condition of Confinement (Against Aramark)

Under the Eighth Amendment, prisoners are entitled to "a well-balanced meal with sufficient nutritional value to preserve health." *Oliver v. Fuhrman*, 739 F. App'x 968, 970 (11th Cir. 2018) (per curiam) (citing *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (noting that prisoners received a total of 2,600 calories per day)). This requirement to provide meals that are "reasonably adequate," *id.*, is a low bar. For example, the Eleventh Circuit has dismissed conditions of confinement claims that were based on occasional foreign objects in food, *Oliver*, 739 F. App'x at 970, food served cold, *id.*, and five meals missed each week of a fifteen-month period, *Hernandez v. Fla. Dept. of Corrs.*, 281 F. App'x 862, 866 (11th Cir. 2008) (per curiam). Typically, to state an Eighth Amendment claim based on inadequate nutrition, a plaintiff must allege significant consequent physical harm. *Id.*; *Coleman v. McGhee*, No. 21-12557, 2022 WL 217578, at *2 (11th Cir. Jan. 25, 2022) (per curiam). Plaintiffs complaining of inadequate diet must plead "a serious medical need," *Oliver*, 739 F. App'x at 970, which is defined as "one that has been diagnosed by a physician as mandating treatment," *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003), and which "if left unattended, poses a substantial risk of serious harm," *id.*

13

To support his specific conditions of confinement claim, Plaintiff adequately pleads a serious medical need independent of his diabetes. He states that the low-quality meat products and inadequate nutritional content of Aramark's meals have caused damage to his stomach lining, internal bleeding, blood in his stool, ulcers, and swelling in his abdomen. Dkt. 65 at 5. Zephyrhills medical personnel prescribed him tests, x-rays, and medications to address these issues. *Id.*; Dkt. 65-1 at 96–101. These facts, taken as true and construed in the light most favorable to Plaintiff, establish a specific conditions of confinement claim based on low-quality and nutritionally inadequate meals.

Defendant correctly notes that the Constitution does not guarantee "'the amenities, conveniences, and services of a good hotel,'" Dkt. 69 (quoting *Harris v. Fleming*, 839 F.2d 1232 ,1235 (7th Cir. 1988), "'comfortable prisons,'" *id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)), or "food that is tasty or even appetizing," *id.* (citing *Robbins v. Robertson*, 782 F. App'x 794, 805 (11th Cir. 2019). But the Constitution does require "the minimal civilized measure of life's necessities." *Id.* (quoting *Rhodes*, 452 U.S. at 347). The deficiencies alleged by Plaintiff sound more in minimal necessity than in comfort.

"An inmate must rely on prison authorities" to meet his most basic necessities. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "[I]f the authorities fail to do so, those needs will not be met." *Id.* Plaintiff does not allege that Aramark

14

failed to provide him with appetizing meals—he asserts that Aramark served him inedible food, and not enough of even that. Aramark misses the mark by suggesting that Plaintiff's plea for edible food in sufficient quantities is akin to demanding hotel-like service. To the contrary, it is plain that Plaintiff understands the limitations of prison food. Multiple affidavits negatively compare Aramark's meals to those of prior food service providers. The benchmark Plaintiff is aiming for here isn't a good hotel; it is constitutionally adequate nutrition.

The instant Second Amended Complaint adequately states deliberate indifference to a serious medical need and a specific conditions of confinement claim against Aramark.

### III. Aramark's Liability Under *Monell*

Defendant Aramark further argues that, as a private entity under contract to provide state services, it cannot be sued under § 1983 unless its policy or custom caused the alleged constitutional violation. Dkt. 69 at 5–6.

As with municipalities, private entities providing state services cannot be held vicariously liable for the actions of their individual employees. *Harvey v. Harvey*, 949 F.2d 1127, 1129–30 (11th Cir. 1992) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)) (explaining that *Monell* applies to private corporations). Instead, a private company is liable only if it has an official policy or unofficial custom of deliberate indifference to inmate health and safety. *Craig v.*

*Floyd Cnty.*, 643 F.3d 1306, 1310 (11th Cir. 2011). Because it is unlikely that a company such as Aramark will have an official policy of deliberate indifference, an inmate typically must rely on unofficial custom. *Id.* The inmate must show that the company has a custom of permitting a constitutional violation, and that the custom is the "moving force" behind that violation. *Id.* (citing *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1330 (11th Cir. 2003)).

A custom is "a practice that is so settled and permanent that it takes on the force of the law." *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004) (quotation omitted). A single incident cannot establish custom; instead, courts look to a practice that is "longstanding and widespread." *Id.* (citing *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir.1991)). "Merely citing one's own personal experience, without more, is insufficient to show a longstanding and widespread practice." *Derks v. Bassa*, No. 22-13202, 2023 WL 5664197, at *2 (11th Cir. Sept. 1, 2023) (citing *Brown*, 923 F.2d at 1481; *Myrick v. Fulton County*, 69 F.4th 1277, 1299 (11th Cir. 2023)).

Here, Plaintiff alleges that Aramark consistently failed to provide him and fourteen other diabetic inmates with constitutionally adequate nutrition from March 15, 2022 to November 18, 2023. Dkt. 65 at 5. As the Second Amended Complaint was filed November 20, 2023, the Court can reasonably infer that the complained-of behavior continues to the present. Dkt. 65 at 1. Indeed, the

Complaint's attachments aver that the alleged practices have gone on for the duration of Aramark's contract with the FDOC. Dkt. 65-1 at 54, 56, 61. Further, Plaintiff does not rely solely on his own personal experience. He attached multiple witness statements from other diabetic inmates to his Second Amended Complaint. Dkt. 65-1 at 61–68, 71–74. As a result, the Complaint adequately pleads that Aramark has a longstanding and widespread practice of providing calorically and nutritionally deficient meals to diabetic inmates.

However, Plaintiff does not state sufficient facts to show that Aramark has a policy or custom of serving meals late to diabetics on insulin, or of deliberate indifference to employees doing the same. The record shows that Aramark instructed supervisors to serve diabetic meals promptly. Dkt. 65-1 at 29. As a result, Plaintiff's claim against Aramark may proceed as to calorically and nutritionally deficient meals, but not based on timely service.

### IV.   Individual Capacity Claims Against Ms. Pierre

Ms. Pierre is the official who answered Plaintiff's DOC grievances on behalf of Aramark. *See* Dkt. 1-1 at 2–4. As with Aramark, Ms. Pierre cannot be held vicariously liable for the actions of subordinate Aramark employees. *West v. Tillman*, 496 F.3d 1321, 1328–29 (11th Cir. 2007). If a supervisor does not personally participate in allegedly unconstitutional conduct, she can only be held liable for that conduct under a theory of deliberate indifference. *Id.* If the

17

supervisor "responded reasonably to the risk," she cannot be held liable. *Swan*, 958 F.3d at 1089.

Ms. Pierre responded reasonably to Plaintiff's grievance as to late meals, instructing that meals should be served on time. Dkt. 45-1 at 3. She cannot be held liable for the late meals. But as to the allegations of calorically and nutritionally inadequate food, the Second Amended Complaint stated facts showing Ms. Pierre's personal involvement. Plaintiff alleges that Ms. Pierre personally "leaves food off trays, with no substitution." Dkt. 65 at 3. It also asserts that she personally orders nutritionally inadequate food to save Aramark money and receive a bonus for herself. Dkt. 65-1 at 56, 60. These are changes from the original Complaint, based upon which the Court entered its Order dismissing claims against Ms. Pierre in her individual capacity. Dkt. 58 at 5–6. Thus, the claims against Ms. Pierre for serving fewer calories than required and for serving nutritionally deficient meals may proceed, but Plaintiff is cautioned that failure to prove these allegations may result in sanctions.

**DONE AND ORDERED** in Tampa, Florida, on March 26, 2023.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**

Petitioner, *pro se*
Counsel of Record

19