## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**TONY L. HILL**,

    Plaintiff,

v.                                    CASE NO. 8:23-cv-26-WFJ-NHA

**ARAMARK CORRECTIONAL SERVICES, LLC**, et al.,

    Defendants.

_____ /

## ORDER

Before the Court is Defendants Aramark Correctional Services, LLC's and H. Pierre's (collectively, "Defendants") Motion for Summary Judgment, Dkt. 82, and Plaintiff Tony L. Hill's ("Plaintiff") *pro se* response. Dkts. 86 & 88.[1] Upon careful consideration, the Court grants Defendants' Motion.

## BACKGROUND

Plaintiff, a diabetic inmate currently housed at Columbia Correctional Institution, brings claims under 42 U.S.C. § 1983 against Defendants. Plaintiff asserts that the events giving rise to his Section 1983 claims occurred from March 15, 2022, to November 18, 2023, while he was housed at Zephyrhills Correctional

---

[1] Plaintiff also brings a motion to strike defense expert Dr. Stephanie A. McKnight's report. Dkt. 86. Plaintiff claims that Defendants obtained Plaintiff's medical records without his consent, in violation of the Health Insurance Portability and Accountability Act. Dkt. 86 at 1. Because the Defendants' Motion for Summary Judgment (Dkt. 82) heavily relies on Dr. McKnight's report, the Court will also address Plaintiff's motion to strike in this Order.

Institution ("Zephyrhills"). Dkt. 65 at 5. Defendant Aramark is a food service provider contracted with the Florida Department of Corrections ("FDOC") to provide inmate meals at Zephyrhills. Dkt. 81 at 11. The five-year contract began on April 7, 2022. *Id.* Defendant H. Pierre is the Aramark Food Service Director at Zephyrhills and has held this position at all times relevant to the instant litigation. *Id.* at 3.

Apart from some additional medical documentation on a colonoscopy (Dkt. 88 at 11-14), Plaintiff's response to Defendants' motion for summary judgment largely relies on the exhibits attached to the Second Amended Complaint ("SAC"). *See* Dkt. 88 at 1 (citing Dkt. 65-1). Additionally, although not attached to Plaintiff's summary judgment response, the Court also considers exhibits attached to Plaintiff's response to Defendants' motion to dismiss. *See* Dkt. 72-1 (providing additional exhibits and affidavits).

First, Plaintiff attached notes, signed by Zephyrhills medical providers, to the SAC. The notes record Plaintiff's diabetes diagnosis and prescribe him a 2,600-calorie diet. Dkt. 65-1 at 19–21. However, Plaintiff contends that Aramark was not providing him with 2,600 calories per day. Dkt. 65 at 3; Dkt. 88 at 1. Plaintiff and other inmates claim that when Aramark runs out of an item on the daily menu, the supervisor instructs staff to simply leave that slot on the tray empty rather than providing a substitute. Dkt. 65 at 3; Dkt. 72-1 at 10. Attachments to the SAC allege

that Aramark staff withhold butter and vegetable spread, further reducing the caloric content of each meal. Dkt. 65-1 at 22. Two affidavits from inmate kitchen workers accuse Aramark of adding water to leftovers, thereby increasing the volume of each menu item without compensating for the lost calories. Dkt. 65-1 at 62; Dkt. 72-1 at 3-4. Finally, attachments describe a specific instance (on or about November 2022) when the water at Zephyrhills was turned off, and Aramark provided multiple contingency meals with inadequate calories. Dkt. 65-1 at 24.

Next, the SAC and the various exhibits describe the nutritional inadequacy of the food served by Aramark and its effects on their health. It appears that there are two significant issues with Aramark's meals: indigestible meat and excessive starch content.

Plaintiff states that Aramark serves inedible soybean meat and "vegetable texture" meat byproducts. Dkt. 65 at 5. In affidavits, other diabetic inmates attest to the meat's poor quality, describing a "loaf" mixed from scraps of animal intestine, undesirable cuts, or other animal byproducts. Dkt. 65-1 at 51, 54, 56, 59, 61–63; Dkt. 72-1 at 4. The affiants also state that, while the menu appears varied, in actuality, each meal contains the same animal byproduct loaf under different labels (i.e., "Southern BBQ," "Chili Mac," "Taco Meat"). Dkt. 65-1 at 51, 54, 56, 59, 61–63, 89-93. H. Pierre allegedly orders this low-quality meat to save Aramark money, thereby earning bonuses for herself. *Id.*; Dkt. 88 at 3. H. Pierre's affidavit

directly contradicts this argument. Dkt. 81 at 4 ("I do not receive any monetary—
or non-monetary—bonus for saving Aramark money.").

Plaintiff alleges that the meat byproduct served by Aramark injures his
stomach lining and intestines, causing internal bleeding, blood in his stool, and
ulcers. Dkt. 65 at 5; Dkt. 88 at 8, 17. Because of these injuries, medical providers
have ordered him to undergo testing and X-rays. Dkt. 65 at 5; Dkt. 88 at 11-14
(showing results of Plaintiff's colonoscopy). He attaches several prescriptions,
which he says are to treat the damage to his stomach. Dkt. 65-1 at 96–101; Dkt. 72-
1 at 13-16. Other inmates also claim the meat served makes them sick, with
multiple affiants asserting that they have stomach pain, gas, and diarrhea
"immediately" after eating it. Dkt. 65-1 at 50–51, 56, 59; Dkt. 72-1 at 4-5, 7, 10,
12.

Regarding the claims of excessive starch, Plaintiff states that he does not
receive fresh fruit, vegetables, dairy products, or wheat products. Dkt. 65 at 3–4;
Dkt. 88 at 3. Affidavits describe a diet comprised primarily of potatoes, grits, rice,
beans, and noodles. Dkt. 65-1 at 50, 52, 54, 56–60, 62; Dkt. 72-1 at 4, 6, 10, 12.
Often, these starches come in the form of "double portions," presumably as a
substitute for a more varied diet. Dkt. 65-1 at 52, 57, 59–60, 62. Some affiants
further assert that the food is frequently spoiled or old leftovers. Dkt. 65-1 at 54,
57, 59–60, Dkt. 72-1 at 4, 6, 10, 12. Excessive starch allegedly harms diabetics in

two ways: (1) by requiring higher doses of insulin and (2) by increasing and/or deregulating their blood sugar. Dkt. 65-1 at 53, 54, 57, 60, 62.

In opposition, Defendants filed an amended expert report by Stephanie A. McKnight, M.D., in support of their motion for summary judgment. Dkt. 100. Dr. McKnight reviewed Aramark's Zephyrhills "menus and Plaintiff's medical records and opined that the meals served by Aramark are nutritionally adequate for diabetics and that there is no evidence of any injury, harm, or adverse physical effects that resulted from the diets or the food that Aramark provided to Plaintiff during his incarceration." Dkt. 82 at 2.

After achieving administrative exhaustion, the Court allowed Plaintiff to file the SAC on December 20, 2023. Dkt. 65. The SAC alleges that Aramark consistently fails to provide diabetic inmates with meals that are calorically and nutritionally adequate. Plaintiff's Eighth Amendment claim is based on three broad assertions: (1) diabetic inmates are to receive 2,600 calories per day, but the meals provided by Aramark consistently fall short of this requirement; (2) Aramark is regularly late with diabetic meal service for Plaintiff; and (3) Aramark purchases and prepares meals that are nutritionally inadequate and practically indigestible. Dkt. 65 at 3-4. Plaintiff seeks monetary and injunctive relief, requesting that the Court order Aramark to serve fresh fruits, genuine dairy products, and real meat. Dkt. 65 at 5. The Court dismissed Plaintiff's second assertion because he failed to

state sufficient facts to show that Aramark has a policy or custom of serving meals late to diabetics on insulin.[2] Dkt. 74 at 17 ("Plaintiff's claim against Aramark may proceed as to calorically and nutritionally deficient meals, but not based on timely service.").

Defendants filed the instant motion for summary judgment, arguing that Plaintiff failed to prove his specific conditions of confinement claim, was unable to meet his burden of proving causation for deliberate indifference, failed to establish a *Monell* violation, and was unable to provide evidence for the claims against H. Pierre in her individual capacity. *See* Dkt. 82. The Court will address these arguments, beginning with Plaintiff's motion to strike Defendants' expert witness.

## LEGAL STANDARD

Summary judgment is only appropriate when there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed R. Civ. P. 56(a). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[2] The Court also dismissed Plaintiff's claim to hold Defendant H. Pierre individually liable for late meals. Dkt. 74 at 18.

The moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). The Court, in ruling on a motion for summary judgment, "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e), (c). Speculation or conjecture cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

The court may not weigh evidence to resolve a factual dispute; if a genuine issue of material fact is present, the court must deny summary judgment. *Hutcherson v. Progressive Corp.,* 984 F.2d 1152, 1155 (11th Cir. 1993). Likewise, the court should deny summary judgment if reasonable minds could differ on the inferences arising from undisputed facts. *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir. 1992).

## DISCUSSION

### I.    Plaintiff's Motion to Strike Expert Witness for Violation of HIPAA

"The [Health Insurance Portability and Accountability Act ("HIPAA")]
regulations generally prohibit covered entities from using or disclosing 'protected
health information.'" *Murphy v. Dulay*, 768 F.3d 1360, 1368-69 (11th Cir. 2014)
(quoting 45 C.F.R. § 164.508(a)(1)). "[W]hen certain requirements are met,"
however, the regulations "permit covered entities to disclose protected health
information." *Id.* at 1369. For example, "even without a written authorization"
from the patient, "[a] covered entity may disclose protected health information in
the course of any judicial or administrative proceeding." *Id.* (quoting 45 C.F.R. §
164.512(e)(1)). Such disclosure must follow the procedures set forth in the HIPAA
regulations.

As relevant here, information may be released in response to a "subpoena . .
. that is not accompanied by an order of a court or administrative tribunal," so long
as certain conditions are met. 45 C.F.R. § 164.512(e)(1)(ii). Specifically, a
"covered entity [must] receive[] satisfactory assurance from the party seeking the
information that reasonable efforts have been made to either (1) ensure that the
individual whose information is to be shared has been given notice of the request,
or (2) secure a qualified protective order." *Murphy*, 768 F.3d at 1369 (citing 45
C.F.R. § 164.512(e)(1)(ii)). "[T]o establish that reasonable efforts have been made

8

to give notice, the party requesting information must show by written documentation that it has made a 'good faith attempt to provide written notice,' that such notice included sufficient information about the litigation to permit the individual to raise an objection to the court, that the time for the individual to raise objections to the court has elapsed, and that either no objections were filed or all objections filed have been resolved by the court." *Id.* at 1369-70 (quoting 45 C.F.R. § 164.512(e)(1)(iii)).

Here, Defendants complied with the applicable HIPAA regulations to obtain Plaintiff's medical records. On April 12, 2024, Plaintiff received a letter from Defense Counsel requesting that Plaintiff sign an FDOC "Consent and Authorization for Use and Disclosure of Confidential Information" form. Dkt. 86 at 4. Plaintiff refused to sign the consent form on four separate occasions. *Id.* at 1. Plaintiff then received a copy of the Defendants' subpoena for his medical records in April or May 2024 (see Dkt. 90 at 2–5), but never filed an objection to the subpoena on the docket until December 2024 and January 2025. *See* Dkts. 86, 87, 90. The subpoena's compliance date was May 13, 2024. *Id.* at 3. As such, Plaintiff's motions for miscellaneous relief, filed in December 2024 and January 2025, are untimely because they were made long after the compliance date. *See Centennial Bank v. Servisfirst Bank Inc.*, No. 8:16-cv-88-JSS-CEH, 2016 WL 4163560, at *4 (M.D. Fla. Aug. 5, 2016) ("[C]ourts hold that a motion to quash

filed before the date of compliance stated on the face of the subpoena is timely.");
*Moreno v. Serco Inc.*, No. 1:15-cv-3382-CC-JKL, 2016 WL 9774501, at *1 (N.D. Ga. Sept. 20, 2016) ("[A] party's motion to quash a nonparty subpoena is untimely if it is filed after the date of compliance.").

Furthermore, Defendants made reasonable efforts to provide written notice by asking Plaintiff to sign a consent form on four occasions and sending a copy of the subpoena itself. Plaintiff was also aware that Defendants were subpoenaing his medical records because he had filed an inmate request form regarding his medical records on May 17, 2024. Dkt. 90 at 2. As such, the written notice contained sufficient information about the litigation to permit Plaintiff to file an objection with the Court. *Id.* at 3–5. Because the time for Plaintiff to raise objections with the Court has elapsed, Plaintiff's motion to strike is denied.[3]

## II.    Section 1983 Claims

The Court now turns to Defendants' motion for summary judgment on all of Plaintiff's Section 1983 claims. For the reasons discussed below, the Court grants Defendants' motion for summary judgment.

---

[3] *See also Sanchez v. McCray*, No. 05-22171-CIV, 2008 WL 11452601, at *2 (S.D. Fla. Feb. 25, 2008) ("Plaintiff placed his medical condition at issue by bringing an action against the Defendants for medical indifference for failure to treat the Plaintiff's eyes. It would therefore be patently unfair to deny the Defendants access to Plaintiff's medical records related to that condition on the basis of Plaintiff's privacy rights. The Plaintiff has, in essence, waived his privacy rights to those medical records.").

a. *Injunctive Relief and Mootness Doctrine*

As an initial matter, the Court finds that Plaintiff's claims for injunctive relief are moot.[4] Article III of the Constitution limits this Court's jurisdiction to the consideration of cases and controversies. U.S. Const. art. III, § 2; *see also Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2001) (per curiam). "If events that occur subsequent to the filing of a lawsuit . . . deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." *Al Najjar*, 273 F.3d at 1336. Prisoners' claims for injunctive or declaratory relief regarding prison conditions generally become moot when the prisoner transfers to another prison. *See Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) (per curiam); *McKinnon v. Talladega Cty., Ala.*, 745 F.2d 1360, 1363 (11th Cir. 1984). However, there is a narrow exception when a challenged action is "capable of repetition, yet evading review," but it only applies "if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *United States v. Sanchez-Gomez*, 584 U.S. 381, 391 (2018) (citation omitted).

Here, Plaintiff's claims in the SAC are moot since he requested injunctive relief concerning conditions in a correction institution where he is no longer

---

[4] The Court previously ordered additional briefing on why the instant proceeding was not moot following Plaintiff's transfer from Zephyrhills. Dkt. 83.

incarcerated. Dkt. 65 at 5. Since filing the SAC, Plaintiff has been transferred twice: from Zephyrhills in April 2024 to Martin Correctional Institution ("Martin") (Dkt. 77) and from Martin to his current location at Columbia Correctional Institution in October 2024. Dkt. 90 at 8; Dkt. 91 at 3; Dkt. 94 at 4. Further, Plaintiff has not demonstrated that the challenged action falls within the narrow exception to the mootness doctrine. A thorough review of the SAC reveals that this challenged action is specific to Aramark's actions and employees at Zephyrhills. Because of the transfer, Plaintiff's claims for injunctive relief no longer present a case or controversy over which the Court has jurisdiction. *See Robbins v. Robertson*, 782 F. App'x 794, 800 (11th Cir. 2019) ("In short, given Plaintiff's transfer to Hayes State Prison, an injunction directing his former prison officials to provide Plaintiff with a particular diet would provide Plaintiff with no relief."). As such, the Court grants summary judgment in favor of Defendants on Plaintiff's Section 1983 claims for injunctive relief.

However, Plaintiff's claim for $388,888 in monetary damages is not moot simply because he was transferred from Zephyrhills. Dkt. 65 at 5. "Transfer of a prisoner does not moot a claim for money damages." *McKinnon*, 745 F.2d at 1362 (citation omitted). "Unlike declaratory and injunctive relief, which are prospective remedies, awards for monetary damages compensate the claimant for alleged past wrongs." *Id.* Plaintiff's transfer from Zephyrhills signaled the end of the alleged

deprivation of his constitutional rights. It did not destroy his cause of action that accrued from March 15, 2022, to November 18, 2023, while at Zephyrhills. Dkt. 65 at 5. The Court now considers Plaintiff's Section 1983 claims for damages.

The Eighth Amendment prohibits cruel and unusual punishment, i.e., "the unnecessary and wanton infliction of pain." *Thomas v. Bryant*, 614 F.3d 1288, 1303 (11th Cir. 2010). "In the prison context, three distinct Eighth Amendment claims are available to plaintiff inmates alleging cruel and unusual punishment." *Id.* These are (1) specific conditions of confinement; (2) excessive force; and (3) deliberate indifference to serious medical needs. *Id.* at 1304. Each type of claim must satisfy an objective and a subjective prong. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Under the objective prong, a plaintiff must show a deprivation that is "sufficiently serious to constitute a denial of the minimal civilized measure of life's necessities." *Id.* Under the subjective prong, a plaintiff must demonstrate that the responsible state actor possessed a "sufficiently culpable state of mind." *Id.*

As stated previously, Plaintiff's Eighth Amendment claim on summary judgment can be subdivided into two basic assertions: (1) Aramark does not serve Plaintiff the medically required 2,600 calories per day, and (2) the food Aramark selects and prepares is nutritionally deficient. The first assertion alleges deliberate

13

indifference to serious medical needs, while the second is a specific condition of confinement claim.

*a.  Deliberate Indifference to Serious Medical Need (Against Aramark)*

To state an Eighth Amendment claim based on deliberate indifference to a serious medical need, an inmate must show: "(1) a serious medical need; (2) a defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016).

The first prong is an objective inquiry. *Ireland v. Prummell*, 53 F.4th 1274, 1287 (11th Cir. 2022). A serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (internal citation and quotation marks omitted), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002).

The second prong is a subjective inquiry. *Ireland*, 53 F.4th at 1287. The "deliberate indifference" inquiry has four elements: "(1) the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, (2) the official actually drew that inference, (3) the official disregarded the risk of serious harm, and (4) the official's conduct amounted to

more than gross negligence." *Id.* (internal quotation marks omitted). "[M]edical treatment violates the Constitution only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Dang ex rel. Dang v. Sheriff, Seminole Cnty. Fla.*, 871 F.3d 1272, 1280 (11th Cir. 2017) (quotation marks omitted). "Summary judgment will be granted in favor of a defendant unless the plaintiff presents evidence of each of these elements." *Melton*, 841 F.3d at 1223.

Here, Aramark does not contest that diabetes is an objectively serious medical need. Dkt. 82 at 2; *see Hammonds v. Theakston*, 833 F. App'x 295, 300 (11th Cir. 2020). Nor does Defendants dispute the authenticity of Plaintiff's medical documents where the Zephyrhills medical staff prescribed a specific diet for Plaintiff's diabetes. *See* Dkt. 65-1 at 19-21. There is no genuine dispute that Plaintiff has satisfied the objective prong.

Next, the Court concludes there is a genuine dispute on the subjective deliberate indifference prong. Plaintiff's grievances provide at least circumstantial evidence that Aramark was aware of Plaintiff's specialized diet, that he was not receiving meals consistent with that diet, and the possible risks associated with not receiving his medically prescribed diet. Dkt. 65-1 at 8–13, 16–17, 22, 24–26, 28–29; *see Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007) (noting that the defendant "was obviously aware of the contents of [the inmate's] complaint

because he responded to it"). Additionally, affidavits from other inmates note that when Aramark runs out of an item on the menu, Aramark supervisors instruct inmate staff to simply leave that slot on the tray empty rather than providing a substitute. Dkt. 65 at 3; Dkt. 72-1 at 10. Two affidavits from inmate kitchen workers also recall Aramark adding water to leftovers, which increases the volume of a menu item without replacing calories. Dkt. 65-1 at 62; Dkt. 72-1 at 3-4. In response, Defendants cite the affidavits of H. Pierre and Dr. McKnight to argue that Aramark must follow FDOC's contractually mandated menus, that food is never (purposely or mistakenly) withheld from an inmate's tray, and that the meals listed in the menu are nutritionally balanced. Dkt. 82 at 8 (citing Dkts. 81 and 80). These conflicting parts of the record create a genuine dispute of material fact.

Regardless, the Court grants summary judgment on Plaintiff's deliberate indifference claim because Plaintiff has failed to show a genuine dispute exists regarding the causation element. *See Celotex*, 477 U.S. at 323 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

"To prevail on a claim of deliberate indifference, a plaintiff must show . . . causation between that indifference and the plaintiff's injury." *Melton*, 841 F.3d at 1220; *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013) ("To survive summary judgment in a case alleging deliberate indifference, a plaintiff must

16

produce sufficient evidence of . . . causation.") (internal quotation marks omitted). The Eleventh Circuit has held that "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill*, 40 F.3d at 1188.

Here, the medical causation issue does not concern a complete denial or delay in treatment. Instead, it involves inadequate caloric servings as required by Plaintiff's prescription. Nevertheless, the issue of causation is similar in that a fact finder must determine what injury, if any, resulted from Defendants' indifference in not providing enough calories for Plaintiff's diabetic diet. Plaintiff, however, fails to point to any injury caused by Defendants' failure to serve at least 2,600 calories. Indeed, the SAC makes it clear the injuries to Plaintiff's stomach lining and intestines that led to internal bleeding, blood in his stool, and ulcers were "due to excessive soybean patties" and other meat byproducts served by Aramark, not insufficient calories. Dkt. 65 at 5.

To the extent Plaintiff is arguing he was harmed by receiving insufficient calories as a diabetic inmate, there is no medical evidence in the record to dispute Dr. McKnight's report that concludes otherwise. Dr. McKnight found that "after compliance with insulin and a 2600 calorie diet, [Plaintiff's] blood sugar improved. By his next routine testing for diabetes, his A1c was 6.2, consistent with controlled

17

diabetes." Dkt. 100 at 11. Indeed, during the period when Plaintiff's claims allegedly accrued (from March 2022 to November 2023), Dr. McKnight found that Plaintiff was "able to reduce his insulin demand consistently between February of 2022 and August of 2023." *Id.* By November 2023, Plaintiff's endocrinologist was able to discontinue his insulin altogether. *Id.* Ultimately, Dr. McKnight concluded that Plaintiff's medical records showed that his "diabetes went into remission during this time." *Id.*

Moreover, Plaintiff fails to provide any "verified medical evidence" to challenge Dr. McKnight's determination that the FDOC menu, contractually provided to Aramark, meets the medically required 2,600 calories per day for diabetic inmates. *Hill*, 40 F.3d at 1188; *see* Dkt. 100 at 9. As such, even though Plaintiff may not have been receiving all the calories as prescribed, there is nothing in the record that would allow a jury to identify any harm or injury caused by the omission. Even if there was some evidence of causation, identifying it presents a "technical and scientific issue that requires the specialized knowledge of an expert medical witness." *Wingster v. Head*, 318 F. App'x 809, 815 (11th Cir. 2009). In the absence of verifying medical evidence showing causation, Defendants are entitled to summary judgment on Plaintiff's claim of deliberate indifference to a serious medical need. *See Celotex*, 477 U.S. at 322 (noting summary judgment is proper "against a party who fails to make a showing sufficient to establish the

18

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

b.  *Specific Condition of Confinement (Against Aramark)*

Next, the Court considers Plaintiff's condition of confinement claim that the food Aramark prepares is nutritionally deficient. Defendants argue that "Plaintiff is incapable of proving that Aramark denied him with the 'minimal civilized measure of life's necessities' [because] the meals Plaintiff received constitute a nutritionally adequate diet and do not present a danger to his health and well-being." Dkt. 82 at 11. The Court agrees.

The Eighth Amendment governs the conditions and treatment of prisoners while they are incarcerated. *Farmer*, 511 U.S. at 832. Underlying a conditions of confinement claim, prison officials have a duty to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Id.* As with deliberate indifference claims, an Eighth Amendment violation requires a prisoner to satisfy an objective and subjective inquiry regarding a prison official's conduct. *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).

The objective standard assesses whether those conditions were severe enough to constitute cruel and unusual punishment. *Robbins*, 782 F. App'x at 803. In other words, only "extreme" deprivations of those basic life necessities constitute Eighth Amendment violations. *Hudson v. McMillian*, 503 U.S. 1, 8–9

(1992). A prisoner must prove that the condition in question was objectively "extreme," meaning that it "poses an unreasonable risk of serious damage to his future health or safety" that "society considers . . . to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Chandler*, 379 F.3d at 1289 (alteration accepted) (emphasis in original) (quotation marks omitted).

The subjective standard requires the prisoner to "demonstrate that the government actor accused of the abusive conduct was aware that he was acting cruelly. Thus, to satisfy this component, the prisoner must plead facts showing that the defendant prison official acted with deliberate indifference, meaning that the official knew of and disregarded an excessive risk to inmate health or safety." *Robbins*, 782 F. App'x at 804 (citing *Chandler*, 379 F.3d at 1289–90). The subjective standard elements are the prison official (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) displayed conduct that is more than mere negligence. *Oliver v. Fuhrman*, 739 F. App'x 968, 970 (11th Cir. 2018) (citing *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003)).

In the nutritional context, prisoners are only entitled to "a well-balanced meal with sufficient nutritional value to preserve health." *Oliver*, 739 F. App'x at 970 (citing *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985)). This requirement to provide meals that are "reasonably adequate," *id.*, is a low bar. For

20

example, the Eleventh Circuit has dismissed conditions of confinement claims that were based on occasional foreign objects in food, *Oliver*, 739 F. App'x at 970, food served cold, *id.*, and five meals missed each week over fifteen months, *Hernandez v. Fla. Dept. of Corrs.*, 281 F. App'x 862, 866 (11th Cir. 2008).

Defendants argue that Plaintiff cannot satisfy the objective prong as "there is no doubt in this case that the meals Plaintiff received constitute a nutritionally adequate diet and do not present a danger to his health and well-being." Dkt. 82 at 11. To support this claim, Defendants refer to Dr. McKnight's report, which states that the FDOC menu meals provide "approximately 2,600 calories and is balanced and consists of protein, fat, and carbohydrates." *Id.* Defendants also point to Plaintiff's lack of "lay or expert testimony from a dietician or medical personnel that Plaintiff is not provided with a nutritionally adequate diet or that the diet caused his alleged injury." *Id.* at 11-12.

On the other hand, Plaintiff's response refers to the exhibits attached to the SAC concerning meat byproducts and excessive starch to support his specific conditions of confinement claim. Dkt. 88 at 2, 3, 8, 12. Specifically, Plaintiff's affidavit and sworn statements from other inmates discuss inedible meat allegedly mixed from scraps of animal intestines, undesirable cuts, or other animal byproducts. Dkt. 65-1 at 50-52, 54, 56–63; Dkt. 72-1 at 4-5. As for the claims of excessive starch, the affidavits describe "double portions" of mostly potatoes, grits,

21

rice, beans, and noodles. Dkt. 65-1 at 50, 52, 54, 56–60, 62; Dkt. 72-1 at 4, 6, 10, 12. Some affiants further recall that food is frequently spoiled or consists of old leftovers. Dkt. 65-1 at 54, 57, 59–60, Dkt. 72-1 at 4, 6, 10, 12. Plaintiff also attaches packaging/nutrition labels from different meats that are served to inmates with unsupported commentary about how the chicken meat causes "cancer" and the breakfast patties can lead to "heart attacks." Dkt. 65-1 at 89-94.

Here, Plaintiff's attachments and affidavits are insufficient to survive the summary judgment phase. Without more, the affidavits from fellow inmates that provide unsupported lay opinions about the nutritional value (or lack thereof) of Aramark's food are insufficient to defeat Defendants' motion for summary judgment. *See Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) ("Moreover, statements in affidavits that are based, in part, upon information and belief, cannot raise genuine issues of fact, and thus also cannot defeat a motion for summary judgment." (citations omitted)); *Walace v. Cousins*, 783 F. App'x 910, 913 (11th Cir. 2019) ("[A]n affidavit that fails to support its assertions 'with [] specific supporting facts [has] no probative value.'" (quoting *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000)).

Conversely, Defendants provide evidence to show that there is no genuine dispute the FDOC menu meals are "reasonably adequate" and have "sufficient nutritional value to preserve health." *Oliver*, 739 F. App'x at 970. Plaintiff has not

provided any evidence to challenge Dr. McKnight's findings that the FDOC
Master Menu is "balanced and consists of protein, fat, and carbohydrates." Dkt.
100 at 9. H. Pierre's affidavit also makes it clear Aramark must contractually serve
meals outlined in the FDOC menu, cannot alter the set menu or recipes, and only
orders food from FDOC-approved vendors. Dkt. 81 at 4; *see also Johnson v.
Aramark Corr. Servs., LLC*, No. 3:21-CV-P725-JHM, 2024 WL 313643, at *5
(W.D. Ky. Jan. 26, 2024) (granting summary judgment where the defendants
produced the affidavit of a food service administrator who stated the inmate's
diabetic diet menu "was developed by qualified [South Carolina Department of
Corrections] nutritionists in accordance with state and federal statutes; [South
Carolina Department of Health and Environmental Control] regulations; and the
'Recommended Dietary Allowances' as defined by the National Academy of
Sciences National Research Council").

Nor does Plaintiff present expert evidence to support his conclusion that the
diabetic meals provided to him put him at substantial risk of serious harm beyond
unsupported factual allegations. Plaintiff's SAC and response continually repeat
conclusory claims of the food causing injury to his stomach lining and intestines,
as shown by internal bleeding, blood in his stool, and ulcers. Dkt. 65 at 5; Dkt. 88
at 8, 17. But these unsupported allegations, including a hand-drawn diagram of
Plaintiff's stomach with assertions that "heavy starch" caused his stomach issues

(Dkt. 88 at 10), are not sufficient to create a genuine factual dispute. *See Arellano v. Jones*, No. 3:20-CV-00228-RBM-LR, 2023 WL 4240742, at *12 (S.D. Cal. June 28, 2023) (finding that the plaintiff was "not a medical expert[ ] and his unsupported lay opinion" was "insufficient as a matter of law to establish a genuine factual dispute"); *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) ("[A] party may not rely on his pleadings to avoid judgment against him.").

Furthermore, Dr. McKnight's review of Plaintiff's medical records from March 2, 2021, to August 21, 2024, found Plaintiff's stomach and intestinal problems were a result of other medical issues that were unrelated to nutritionally deficient food. First, Dr. McKnight noted that the different medications prescribed to Plaintiff (ibuprofen in February 2023 for his hip pain and meloxicam in May 2023 for his arthritis) could explain the abdominal pain, stomach irritation, diarrhea, and blood in his stool. Dkt. 100 at 10. Second, Plaintiff has a history of mental health disorders and took several medications to treat these conditions. *Id.* at 9. From February 2023 to April 2023, one of the drugs prescribed for these mental health conditions was Sertraline, which could contribute to irritable bowel syndrome when discontinued. *Id.* at 10. Third, the gastrointestinal specialist diagnosed Plaintiff with an umbilical hernia, which can cause constipation and peri-umbilical pain. *Id.* Importantly, "[f]ood does not cause umbilical hernias." *Id.*

Fourth, the colonoscopy done in June 2024 showed internal hemorrhoids that could cause blood in the stool. *Id.* at 11. In sum, Defendants' expert concluded that "all of Mr. Hill's abdominal symptoms have alternate explanations and diagnoses: medication changes, medication side effects, umbilical hernia, H. Pylori infection, internal hemorrhoids, which are unrelated to the food Aramark provides to Zephyrhills." *Id.*

Additionally, Aramark began providing food service at the prison on April 7, 2022, but Plaintiff's medical records indicate that he did not seek medical treatment for stomach-related issues until July 2023. *Id.* at 10. Plaintiff's complaints about abdominal pain, diarrhea, and other stomach issues did not arise until 15 months after Aramark began serving food. *Id.*; Dkt. 65 at 5; Dkt. 81 at 7. Without any medical evidence challenging Dr. McKnight's findings, Defendants are entitled to summary judgment on Plaintiff's condition of confinement claim that Aramark's food is nutritionally deficient. *See Robinson v. United States*, 462 F. App'x 885, 887 (11th Cir. 2012) ("Given that Robinson did not present any expert medical evidence to contradict the government's expert medical evidence, the district court properly granted summary judgment[.]").

The only evidence Plaintiff produces to refute Dr. McKnight's affidavit, outside of his own lay opinion, is statements claiming Aramark's food violated the "F.D.A. Memorandums Of Health and Nutrition [that] define[] the product of

25

processing nourishment nourished by, proper vitamins/minerals- A, B, C, D, E, etc. producing healthy blood cells and building healthy [immune] system to fight off illness." Dkt. 88 at 3, 8. Additionally, Plaintiff states, "under F.D.A standard/memorandums Diabetic(s), are to receive low or no starch with wheat bread product(s). Also, wheat noodles, brown rice, etc." *Id.* at 3. The record is devoid of any documents concerning these alleged "F.D.A. memorandums." Even if Plaintiff had filed documents regarding the FDA's food standards, such attachments would be unauthenticated hearsay that cannot be relied upon to defeat summary judgment because Plaintiff has not identified an expert witness who could establish the reliability and relevance of these documents as evidence. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293 (11th Cir. 2012) ("The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment."); *see also Johnson v. Aramark Corr. Servs.*, LLC, No. 3:21-CV-P725-JHM, 2024 WL 313643, at *6 (W.D. Ky. Jan. 26, 2024) (rejecting *pro se* prisoner's "information presumably printed from the internet from the American Diabetes Association titled 'What Can I Eat?' . . . [and] internet search results regarding foods that diabetics should avoid" as unauthenticated hearsay). Thus, the Court grants Defendants' motion for summary judgment as to Plaintiff's condition of confinement claim.

### c.  *Aramark's Liability Under Monell*

Defendants argue that, as a private entity under contract to provide food services to the FDOC, it cannot be sued under Section 1983 unless its policy or custom caused the alleged constitutional violation. Dkt. 82 at 8. In general, private entities providing state services cannot be held vicariously liable for the actions of their individual employees. *Harvey v. Harvey*, 949 F.2d 1127, 1129–30 (11th Cir. 1992) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)) (explaining that *Monell* applies to private corporations). Instead, a private company is liable only if it has an official policy or unofficial custom of deliberate indifference to inmate health and safety. *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310 (11th Cir. 2011). Because it is unlikely that a company such as Aramark will have an official policy of deliberate indifference, an inmate typically must rely on an unofficial custom. *Id.* The inmate must demonstrate that the company has a custom of permitting a constitutional violation and that this custom is the "moving force" behind that violation. *Id.* (citing *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1330 (11th Cir. 2003)).

A custom is "a practice that is so settled and permanent that it takes on the force of the law." *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004) (quotation omitted). A single incident cannot establish custom; instead, courts look to a practice that is "longstanding and widespread." *Id.* (citing *Brown v. City of*

*Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)). "Merely citing one's own personal experience, without more, is insufficient to show a longstanding and widespread practice." *Derks v. Bassa*, No. 22-13202, 2023 WL 5664197, at *2 (11th Cir. Sept. 1, 2023) (citation omitted); *Myrick v. Fulton Cnty., Georgia*, 69 F.4th 1277, 1299 (11th Cir. 2023) ("A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several subordinates.").

Here, Plaintiff alleges that Aramark consistently failed to provide him and other diabetic inmates with constitutionally adequate nutrition from March 15, 2022, to November 18, 2023. Dkt. 65 at 5. He attached multiple witness statements from other diabetic inmates in previous filings. Dkt. 65-1 at 61–68, 71–74; Dkt. 72-1 at 3-12. However, as discussed above, the Court granted Defendants' request for summary judgment on Plaintiff's deliberate indifference claim. While the various affidavits allege a "series of constitutional violations from which deliberate indifference can be inferred," they are inapposite because there was no deliberate indifference (i.e., no constitutional violation) in the first place. *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1311 (11th Cir. 2011) (citation omitted); *Case v. Eslinger*, 555 F.3d 1317, 1328 (11th Cir. 2009) (finding no *Monell* liability in the absence of a constitutional violation). Because Aramark's alleged deliberate

indifference did not cause Plaintiff's injuries, there is no unofficial custom that could establish *Monell* liability against Aramark.[5]

### d. Individual Capacity Claims Against H. Pierre

Finally, Defendants request summary judgment on the claims against H. Pierre in both her individual and official capacities. Dkt. 82 at 16; Dkt. 65 at 2. When being sued in one's official capacity, the suit is "'another way of pleading an action against an entity of which an officer is an agent.'" *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). "Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents." *Id.* In other words, the claims against H. Pierre in her official capacity are the functional equivalent of claims brought against Aramark itself. For the reasons discussed above, summary judgment has already been granted to Defendants on the claims against Aramark. As such, the Court grants summary judgment on the claims made against H. Pierre in her official capacity.

As to claims made against H. Pierre in her individual capacity, "[i]t is well established in [the Eleventh] Circuit that supervisory officials are not liable under §

---

[5] Plaintiff also asserts a claim for violations of unposted certifications under "Art. IV-V Federal Laws of LLC, Sec (666)(1) Fed. Law 29 U.S.C. sec. 905." Dkt. 65 at 3. The Court is unable to determine how this "failure to post certifications" is a constitutional violation that gives rise to a Section 1983 claim. In the absence of a constitutional violation, Defendants are entitled to summary judgment. *Case*, 555 F.3d at 1328 ("[N]either [*Monell*], nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm." (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Keith v. DeKalb Cnty., Georgia*, 749 F.3d 1034, 1047 (11th Cir. 2014) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)). "Instead, to hold a supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Id.* "Personal participation occurs when, for example, the supervisor inflicts the injury himself." *Smith v. LePage*, 834 F.3d 1285, 1298 (11th Cir. 2016) (citation omitted). "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Braddy v. Fla. Dep't of Labor & Emp't Sec.*, 133 F.3d 797, 802 (11th Cir. 1998).

Here, Plaintiff alleged that H. Pierre directly participated in the unconstitutional conduct. Specifically, Plaintiff contends that H. Pierre personally "leaves food off trays, with no substitution," and personally orders nutritionally inadequate food to save Aramark money, receiving bonuses for doing so. Dkt. 65 at 3; Dkt. 65-1 at 56, 60. However, as previously discussed, no supervisory liability can arise in the absence of a constitutional violation. First, there is no genuine dispute as to the nutritional and caloric adequacy of Aramark's food. Plaintiff has presented no evidence to contradict Dr. McKnight's findings that the FDOC menus are nutritionally and calorically balanced. Dkt. 100 at 9. Nor has Plaintiff presented

any evidence to contradict H. Pierre's affidavit, which states that the contract between FDOC and Aramark leaves her with no discretion to adjust the FDOC menus, cooking recipes, or the food vendors she orders from. Dkt. 81 at 4, 13-15.

Next, the SAC and two inmate affidavits assert that H. Pierre leaves food off trays and receives kickbacks for saving Aramark money, which are unsupported factual allegations. While this Court previously accepted such factual allegations as true (Dkt. 74 at 18), Plaintiff's failure to provide evidence that creates a genuine dispute of material fact is fatal to his claims. *See Ellis*, 432 F.3d at 1326 ("For factual issues to be considered genuine, they must have a real basis in the record . . . mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."). Similarly, the two affidavits by fellow inmates, which make the same unsupported factual allegations about H. Pierre (Dkt. 65-1 at 56, 60), are insufficient to defeat Defendants' motion for summary judgment. *See Ellis*, 432 F.3d at 1326; *Walace*, 783 F. App'x at 913.

On the other hand, Defendants provided H. Pierre's affidavit, which states that she has "never purposefully or mistakenly taken, removed, or withheld food from the trays" and that she "does not receive any monetary—or non-monetary—bonus for saving Aramark money." Dkt. 81 at 4. Her affidavit is supported by Dr. McKnight's report, which opines that any of Plaintiff's alleged injuries were not caused by insufficient calories or nutritionally inadequate meals personally served

31

by H. Pierre. Dkt. 100 at 11 ("[T]here is no evidence that any harm came to [Plaintiff] because of the food Aramark provided."). Instead, "all of Mr. Hill's abdominal symptoms have alternate explanations and diagnoses: medication changes, medication side effects, umbilical hernia, H. Pylori infection, internal hemorrhoids, which are unrelated to the food Aramark provides to Zephyrhills." *Id.* As such, summary judgment is due to be granted on Plaintiff's claims against H. Pierre in her individual capacity.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendants Aramark Correctional Services, LLC's and H. Pierre's Motion for Summary Judgment, Dkt. 82, is **GRANTED**.

2. Plaintiff Tony L. Hill's Motion to Strike, Dkt. 86, is **DENIED.**

3. The Clerk is **DIRECTED** to enter judgment in favor of Defendants on all counts, to **TERMINATE** all pending deadlines, and to **CLOSE** the case.

**DONE AND ORDERED** in Tampa, Florida, on April 4, 2025.

*/s/ William F. Jung*

**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**


**COPIES FURNISHED TO:**
Plaintiff, *pro se*
Counsel of Record